NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| INTERNAL REVENUE SERVICE, | : | |
| Appellant, | : | Civ. No. 05-1968 (GEB) |
| v. | : | **MEMORANDUM OPINION** |
| HARVARD SECURED CREDITORS LIQUIDATION TRUST, | : | |
| Appellee. | : | |

**BROWN, District Judge**

This matter comes before the Court upon the appeal of the appellant, Internal Revenue Service ("IRS"), of the March 24, 2005, Order of the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"). This Court, exercising jurisdiction pursuant to 28 U.S.C. § 158(a)(1), reverses the order of the Bankruptcy Court, which granted the appellee's motion for summary judgment and denied the appellant's motion for summary judgment. The matter is remanded to the Bankruptcy Court with instructions to enter judgment for appellant consistent with this Memorandum Opinion.

I.   BACKGROUND

In June 2003, Harvard Industries, Inc. ("Harvard"), filed a tax refund motion pursuant to 11 U.S.C. § 505, whereby Harvard sought refund of payments that were allegedly specified liability losses under 26 U.S.C. § 172(f). The payments were: 1) amounts Harvard expended in 1996 to settle products liability claims relating to aircraft parts manufactured by its Elastic Stop

Nut of America ("ESNA") division; 2) amounts Harvard contributed to its pension plans as part of a settlement with the Pension Benefit Guaranty Corporation ("PBGC"); and 3) certain workers' compensation payments by Harvard.  Prior to the resolution of the tax refund motion, Harvard confirmed its Chapter 11 plan, which assigned certain assets and causes of action to various trusts established by the plan.  Consequently, the Harvard Secured Creditors Liquidation Trust became the party in interest.

At a hearing on September 3, 2003, the Bankruptcy Court decided to treat the tax refund motion as a contested matter and set it down for a pre-trial hearing.  After the hearing, an order was entered that required all motions to be filed by February 2, 2005.  Pursuant to that order, both Harvard and the IRS filed motions for summary judgment and also opposition to each other's summary judgment motions.

On February 22, 2005, the Bankruptcy Court heard oral argument on the motions for summary judgment.  At the close of oral argument, the court denied summary judgment on the issue of the workers' compensation payments pending additional discovery by the parties, and reserved decision on the remaining issues.  On March 24, 2005, the Bankruptcy Court entered an order granting Harvard's motion for summary judgment and denying the IRS's motion, pursuant to the court's opinion dated February 28, 2005, *In re Harvard Indus., Inc.*, 324 B.R. 238 (Bankr. D.N.J. 2005).

The IRS then filed the instant appeal with this Court, seeking review of the Bankruptcy Court's decision and order.

II.  DISCUSSION

    A. <u>Standard of Review</u>

Bankruptcy Rule 8013 provides that the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ."  Fed. R. Bankr. P. 8013.  A factual finding is clearly erroneous only where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *In re Cellnet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003)(quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  A bankruptcy court's conclusions of law, on the other hand, are reviewed *de novo*.  *Id.*  Where mixed questions of law and fact are presented, the appropriate standard must be applied to each component of the appeal.  *Id.*

    B. <u>Harvard's Products Liability Settlement Expenditures Were Not For The Loss Of The Use of Property</u>

Harvard's customers were distributors who were unable to use the lock-nuts purchased from ESNA as an intended item for resale because of a manufacturing defect known as hydrogen embrittlement.  *Harvard Indus.*, 324 B.R. at 241.  In 1996, due to the defect, ESNA entered into settlements with its customers to forgive their accounts receivables.  *Id.*  Additionally, ESNA made a payment of $820,000 to its largest customer due to a lawsuit brought with respect to the defective lock-nuts.  *Id.*  The Bankruptcy Court held that these payments by ESNA were damages as a result of loss of the use of property, within Section 172's definition of product liability.  *Id.*

Section 172, as it existed in 1996, allowed the payment of certain liabilities that were

3

attributable to product liability to qualify as specified liability losses and be carried back and deducted 10 years earlier than when the payment was made.  26 U.S.C. §§ 172(f)(1)(A).  The statute defined product liability as:

> (A) liability of the taxpayer for damages on account of physical injury or emotional harm to individuals, or damage to or loss of the use of property, on account of any defect in any product which is manufactured, leased, or sold by the taxpayer, but only if
> (B) such injury, harm, or damage arises after the taxpayer has completed or terminated operations with respect to, and has relinquished possession of, such product.

26 U.S.C. §§ 172(f)(4)(A)-(B).

The starting point for inquiries into the meaning of a statute is the language itself.  *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989).  In cases where the statute's language is plain, that is where the inquiry ends.  *Id.*  Accordingly, the Bankruptcy Court analyzed Section 172(f)(4) by looking to the language of its component words.  The court accorded "property" its ordinary meaning, and did the same for "use," because neither word is defined in the statute.  *Harvard Indus.*, 324 B.R. at 241.  However, the court did not specifically examine the meaning of "loss."  Since statutory construction is a conclusion of law, the Bankruptcy Court's decision is reviewed *de novo*.

This Court, like the Bankruptcy Court, is unaware of any Third Circuit cases interpreting Section 172 with respect to the provision at issue.  The IRS cites cases in which other courts have interpreted language in insurance cases containing similar "loss of the use of property" provisions.  The cited district court case is not instructive because the court did not interpret the loss of use provision in the policy.  *See Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569 (E.D.N.C. 1999), *aff'd*, 213 F.3d 634 (4th Cir. 2000).  The IRS's other cited

cases on this issue are unpublished circuit opinions, and an "unpublished opinion under no circumstances can be considered precedential by this Court." *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 396 (3d Cir. 2003), *cert. denied*, 541 U.S. 1063 (2004).

The gravamen of the IRS's argument on appeal is that the use of the property could not have been lost where such use was not in existence in the first place. As the IRS contends, "Harvard's distributors were never able to use the lock-nuts Harvard shipped to them, because they were not manufactured properly and were therefore defective. Because these lock-nuts never could have been used, the distributors could not have lost their use." (Appellant's Br. at 7). The Bankruptcy Court dismissed this argument, labeling it "unpersuasive" and concluding that it "does not fit within a common sense reading of the statute." *Harvard Indus.*, 324 B.R. at 241.

However, parsing the language of Section 172 to its component words, as the parties have done in their respective briefs, demonstrates that the definitions of the words "loss" and "use" are in accord with the IRS's argument. The most pertinent definition of "loss" is listed as the "failure to maintain possession of a thing." Black's Law Dictionary 963 (8th ed. 2004). "Use" is defined as "the application or employment of something; esp., a long-continued possession and employment of a thing for the purpose for which it is adapted." *Id.* at 1577.

There is no dispute that the intended use of the lock-nuts was inventory for resale by Harvard's customers. It follows that the loss of such use, under the definition of loss cited above, could not have occurred. Loss contemplates possession followed by the failure to maintain possession. Harvard's customers did not have possession of lock-nuts fit for resale at any point; they merely had possession of defective lock-nuts that were unfit for resale. Consequently,

Harvard's customers could not have lost the use of the property for its intended purpose where they did not possess usable lock-nuts in the first place.

Additionally, Section 172(f)(4)(B) requires that "such injury, harm, or damage arises after the taxpayer has completed or terminated operations with respect to, and has relinquished possession of, such product."[1]  In the instant case, the defect that gave rise to Harvard's liability arose during the manufacturing of the lock-nuts, as Harvard's own brief admits. (Appellee's Br. at 5).  Since the damage to the property clearly occurred before Harvard relinquished possession of the product, the damage to the lock-nuts is excepted from the statutory definition of product liability as stated in 26 U.S.C. § 172(f)(4).

Accordingly, this Court holds that Harvard's product liability losses do not qualify as specified liability losses that may be carried back under 26 U.S.C. § 172(f)(1)(A).

### C. Harvard's Contributions To Its Pension Plans Did Not Arise Under Federal Law

Pursuant to a Settlement Agreement, Harvard contributed $6 million to its pension plans in 1996 to prevent the PBGC from terminating one or more of the pension plans in contemplation of Harvard's proposed $100 million notes offering. (Settlement Agreement at 4-6).  The Bankruptcy Court held that Harvard's payment to its pension plans constituted specified liability losses within Section 172's definition because the payment arose under ERISA more than three years prior to the relevant tax year. *Harvard Indus.*, 324 B.R. at 242-43.  The court's reasoning was based upon the PBGC's determination that Harvard had unfunded current

---

[1] This subsection does not speak to "loss," but it refers to the three other components delineated in subsection (A).  Since subsection (A) refers to "damage to or loss of the use of property" as a single component, it is evident that subsection (B) refers to all of the components listed in subsection (A).

liabilities during tax years 1992 and 1993, allegedly leaving Harvard required by law to make those payments. *Id.* at 242.

Section 172, as it existed in 1996, allowed the payment of certain liabilities that arose under federal or state law to qualify as specified liability losses and be carried back and deducted 10 years earlier than when the payment was made. Specifically, the statute defined "specified liability loss" as:

> the sum of the following amounts to the extent taken into account in computing net operating loss for the taxable year:
> * * *
> (B) Any amount (not described in subparagraph (A)) allowable as a deduction under this chapter with respect to a liability which arises under a Federal or State law or out of any tort of the taxpayer if –
> (i) in the case of a liability arising out of a Federal or State law, the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year . . . .

26 U.S.C. § 172(f)(1)(B).

In *Major Paint Co. v. United States*, 334 F.3d 1042 (Fed. Cir. 2003), the court interpreted Section 172(f) and concluded that "'arising out of a federal law' means more than just that the liability was incurred with respect to an obligation under a federal law; and the nature and amount of the liability must be traceable to a specific law and cannot be the result of choices made by the taxpayer and others." *Id.* at 1046 (citation omitted).

In that case, the plaintiff and its subsidiaries petitioned the United States Bankruptcy Court for relief under Chapter 11 of the United States Code. Under the supervision of the bankruptcy court, plaintiff employed legal, accounting, and other professionals, and the court entered awards of final compensation for the professionals. Plaintiff deducted some of the

professional fees and expenses on its federal income tax returns, and carried back the deduction ten taxable years, pursuant to Section 172. The IRS later denied the loss deduction and plaintiff filed a complaint seeking refund of the taxes.

After the Court of Federal Claims granted summary judgment in favor of the government, the Federal Circuit reviewed the court's construction of Section 172 *de novo*. As the Federal Circuit noted, the IRS has not issued any regulations to aid in interpreting Section 172, nor is there any relevant legislative history. Thus, the court reviewed cases interpreting Section 172 for guidance in reaching its conclusion.

The court noted that the Bankruptcy Code requires the appointment of a committee of creditors holding unsecured claims, which may authorize the employment of professionals to perform services, who may be compensated by order of the Bankruptcy Court. However, the court held that the connection to a federal law is "too attenuated to meet the level of 'arise under' necessary to qualify as a specified liability loss." *Id.* at 1047.

In the instant case, Harvard alleges that its agreement to contribute an additional $6 million annually to its pension plans was to avoid liability to the PBGC for the unfunded benefit liabilities that remained due and owing to the PBGC under 29 U.S.C. §§ 1362(a)-(b). (Appellee's Br. at 29). However, under the reasoning expressed in *Major Paint Co.*, this liability does not qualify as a specified liability loss because it is only tenuously traceable to a specific law and is the result of choices made by Harvard and the PBGC.

First, Harvard's contribution to its pension plans is not traceable to a specific law. By Harvard's own admission, it negotiated the Settlement Agreement with the PBGC to remedy the "substantial total amount of Unfunded Benefit Liabilities." (Appellee's Br. at 30). Yet, the

8

unfunded benefit liabilities were merely speculative at that point.  Explicit in the Settlement Agreement is the recognition that Harvard's proposed issuance of $100 million of notes "provides sufficient reason for the PBGC to seek termination of one or more of the Pension Plans pursuant to . . . 29 U.S.C. § 1342(a)(4) . . . ."  (Settlement Agreement at 4-5).  However, the liability would not actually accrue until such point that the plans were terminated.  29 U.S.C. §§ 1362(a)-(b).  Furthermore, the unfunded benefit liabilities ultimately were not owed to the PBGC because the Settlement Agreement averted the termination of the pension plans.

Second, it follows that Harvard's contribution resulted from a series of choices made by Harvard and the PBGC.  Harvard proposed to issue $100 million of notes, which was followed by the PBGC's indication that such action might cause the PBGC to seek to terminate one or more of the pension plans.  Harvard and the PBGC subsequently conducted negotiations culminating in the Settlement Agreement under which Harvard agreed to contribute $6 million to the pension plans.  Therefore, it is clear that this liability did not arise under a federal law.  Instead, as in *Major Paint Co.*, the liability occurred with respect to an obligation under law, but it was Harvard and the PBGC that determined the nature and amount of the payments.

Accordingly, this Court holds that Harvard's pension plan contributions do not qualify as specified liability losses that may be carried back under 26 U.S.C. § 172(f)(1)(B).  Having reached this conclusion, this Court need not address whether the liability arose at least three years before the beginning of the taxable year under 26 U.S.C. § 172(f)(1)(B)(i).

**III.    CONCLUSION**

For the reasons stated herein, the order of the Bankruptcy Court is reversed and the matter is remanded to the Bankruptcy Court with instructions to enter judgment consistent with this Memorandum Opinion.

Dated: September 27, 2005

                                                  s/ Garrett E. Brown, Jr.
                                                GARRETT E. BROWN, JR., U.S.D.J.